# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| Interior Electric Incorporated Nevada, | Case No.: 2:18-cv-01118-JAD-VCF |
| Plaintiff | |
| v. | **Order Denying Defendants' Motion to Dismiss** |
| T.W.C. Construction, Inc., et al., | [ECF No. 191] |
| Defendants | |

Interior Electric Incorporated Nevada, an electrical subcontractor, alleges that defendant T.W.C. Construction, Inc., a general contractor, encouraged two of its employees to form a competing electrical-subcontractor business by misappropriating Interior Electric's trade secrets and copyrighted material. In the two years since filing this lawsuit, Interior Electric has twice remedied pleading defects identified by the parties and this court, amending its now 70-page complaint to assert 21 causes of action against 10 defendants.[1] T.W.C., Matthew Ryba, and Mark Wilmer now move to dismiss six of those causes of action, arguing that Interior Electric has failed to allege sufficient facts to support them.[2] Interior Electric disagrees, pointing to its extensive complaint and arguing that Federal Rule of Civil Procedure 12(g)(2) bars defendants' successive Rule 12(b)(6) motion.[3] I hold that defendants' motion is improper with respect to Interior Electric's unjust-enrichment, aiding-and-abetting, quantum-meruit, and promissory-estoppel claims, as well as its civil-conspiracy claims against T.W.C, and I decline to consider their objections. I also hold that Interior Electric has alleged sufficient facts, at the pleading

---

[1] *See* ECF No. 188 (second amended complaint).

[2] ECF No. 191 (motion to dismiss).

[3] ECF No. 206 (response).

stage, demonstrating that Ryba and Wilmer intentionally interfered with its prospective

economic advantage and committed civil conspiracy.  So I deny defendants' motion to dismiss.

**Factual Allegations**[4]

Interior Electric is an electrical contractor operating in Nevada and California that

designs and builds electrical solutions, based on its own proprietary template for drafting

electrical-engineering plans.[5]  For more than two decades, T.W.C. hired Interior Electric as an

electrical subcontractor on numerous projects.[6]  But in 2017, T.W.C., through its president

Wilmer and C.E.O. Ryba, solicited two of Interior Electric's employees to build a competing

electrical-subcontractor business named BAMM, which would use Interior Electric's proprietary

templates to complete T.W.C.'s construction projects.[7]  Wilmer and Ryba personally and

secretly bankrolled the new business[8] and, when Interior Electric discovered that its employees

were moonlighting, it fired them.[9]  After March 2017, T.W.C. directed its current and

prospective business opportunities to BAMM and away from Interior Electric, even though

Interior Electric expected that it would be hired to build out the electrical designs it had already

created for T.W.C.'s projects.[10]

---

[4] This is merely a summary of facts alleged in the complaint and should not be construed as findings of fact.

[5] ECF No. 188 at ¶¶ 23, 33, 136–40.

[6] *Id.* at ¶¶ 27, 34.

[7] *Id.* at ¶¶ 10, 11, 38, 142, 144.

[8] *Id.* at ¶¶ 43–45, 49–53.

[9] *Id.* at ¶ 56.

[10] *Id.* at ¶¶ 144, 157, 169, 184.

Interior Electric's 70-page complaint contains extensive allegations involving multiple, independent defendants and claims irrelevant to deciding the present motion.[11]  In relevant part, it brings multiple claims against T.W.C., Ryba, and Wilmer, including claims for unjust enrichment, civil conspiracy, and aiding and abetting.[12]  It also sues T.W.C. based on promissory-estoppel and quantum-meruit–implied-in-fact-contract theories, and Ryba and Wilmer for intentionally interfering with its prospective economic advantage.[13]  Defendants move to dismiss those claims, arguing that each is insufficiently pled.[14]

## Discussion

### A.    Standard of review

Federal Rule of Civil Procedure 8 requires every complaint to contain "[a] short and plain statement of the claim showing that the pleader is entitled to relief."[15]  While Rule 8 does not require detailed factual allegations, the properly pled claim must contain enough facts to "state a claim to relief that is plausible on its face."[16]  This "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation;" the facts alleged must raise the claim "above the speculative level."[17]  In other words, a complaint must make direct or inferential allegations about "all the material elements necessary to sustain recovery under *some* viable legal theory."[18]

---

[11] *See generally id.*

[12] *Id.* at ¶¶ 410–536.

[13] *Id.*

[14] ECF No. 191.

[15] Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

[16] *Twombly*, 550 U.S. at 570.

[17] *Iqbal*, 556 U.S. at 678.

[18] *Twombly*, 550 U.S. at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1989)) (emphasis in original).

District courts employ a two-step approach when evaluating a complaint's sufficiency on a Rule 12(b)(6) motion to dismiss. The court must first accept as true all well-pled factual allegations in the complaint, recognizing that legal conclusions are not entitled to the assumption of truth.[19] Mere recitals of a claim's elements, supported by only conclusory statements, are insufficient.[20] The court must then consider whether the well-pled factual allegations state a plausible claim for relief.[21] A claim is facially plausible when the complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct.[22] A complaint that does not permit the court to infer more than the mere possibility of misconduct has "alleged—but not shown—that the pleader is entitled to relief," and it must be dismissed.[23]

**B.      Rule 12(g)(2)'s procedural bar**

I have partially granted two motions to dismiss submitted by T.W.C. and Ryba,[24] as well as one submitted by Wilmer.[25] Defendants now move again under Rule 12(b)(6),[26] seeking to dismiss six causes of action that have been alleged against Ryba, Wilmer, and T.W.C. with varying consistency since the filing of the June 2018 complaint.[27] Interior Electric contends that Rule 12(g)(2) bars this successive motion to dismiss because these objections were available to

---

[19] *Iqbal*, 556 U.S. at 678–79.

[20] *Id.*

[21] *Id.* at 679.

[22] *Id.*

[23] *Twombly*, 550 U.S. at 570.

[24] *See* ECF Nos. 81, 179.

[25] *See* ECF No. 179.

[26] ECF No. 191.

[27] *See generally* ECF Nos. 1, 130, 188.

Ryba, Wilmer, and T.W.C. in their earlier motions.[28]  Defendants respond that any amendment to Interior Electric's complaint wipes the slate clean, they have not brought this successive Rule 12(b)(6) motion for purposes of delay, and a ruling on their motion promotes judicial efficiency.[29]

Rule 12(g)(2) provides that, "[e]xcept as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion."[30]  And Rule 12(h)(2) states that a "failure to state a claim defense" may be raised "in any pleading allowed or ordered under Rule 7(a); by a motion under Rule 12(c); or at trial."[31]  As the Ninth Circuit has explained, "Rule 12(g)(2) provides that a defendant who fails to assert a failure-to-state-a-claim defense in a pre-answer Rule 12 motion cannot assert that defense in a later pre-answer motion under Rule 12(b)(6)," but must instead raise that defense through the avenues permitted by Rule 12(h)(2).[32]  The procedural history of this case indicates that Rule 12(g)(2) bars the defendants' Rule 12(b)(6) motion with respect to some, but not all, of Interior Electric's claims.

**1.    Rule 12(g)(2) bars objections to Interior Electric's unjust-enrichment, aiding-and-abetting, quantum-meruit, and promissory-estoppel claims, and its civil-conspiracy claims against T.W.C.**

In its initial complaint, Interior Electric sued T.W.C. for all five of these claims and sued Ryba for three of them (unjust enrichment, civil conspiracy, and aiding and abetting).[33]  In its

---

[28] ECF No. 206 at 7–9.

[29] ECF No. 224 at 3–5.

[30] Fed. R. Civ. P. 12(g)(2).

[31] Fed. R. Civ. P. 12(h)(2)(A)–(C).

[32] *In re Apple iPhone Antitrust Litig.*, 846 F.3d 313, 318 (9th Cir. 2017), *aff'd sub nom. Apple Inc. v. Pepper*, 138 S. Ct. 2647 (2018).

[33] *See generally* ECF Nos. 1, 130, 188.

1  first amended complaint, Interior Electric added Wilmer as an individual defendant, suing him,

2  in relevant part, for unjust enrichment, civil conspiracy, and aiding and abetting.[34]  Yet despite

3  being on notice of these claims, defendants did not move to dismiss any of them on the grounds

4  that they were insufficiently pled in either their first or second motions to dismiss.[35]  In their first

5  motion to dismiss, T.W.C. and Ryba moved to dismiss claims for breach of contract, breach of

6  the implied covenant, the statutory claims, interference with economic advantage (against TWC

7  alone), and concert of action.[36]  I granted that motion in part.[37]  But in their second motion to

8  dismiss, which now included Wilmer and which I also granted in part,[38] defendants moved to

9  dismiss the intentional-interference claim on multiple grounds, the unjust-enrichment claim

10  because Ryba and Wilmer were immunized as "corporate representatives" of T.W.C., and the

11  civil-conspiracy claim against Ryba and Wilmer.[39]  Neither motion, however, sought to dismiss

12  the aiding-and-abetting, quantum-meruit, promissory-estoppel, unjust-enrichment, or civil-

13  conspiracy-against-T.W.C. claims because they were insufficiently pled.  A strict application of

14  Rule 12(g)(2) thus bars a successive motion based on those objections.

15        T.W.C., Ryba, and Wilmer assert that the filing of an amended complaint renders

16  previous complaints "non-existent"[40] and that the Ninth Circuit's decision in *In re Apple iPhone*

---

[34] *See generally* ECF Nos. 130, 188.

[35] *See* ECF Nos. 55, 137.

[36] ECF No. 55.

[37] ECF No. 81.

[38] *See* ECF Nos. 137, 179 at 12–13.

[39] *See generally* ECF No. 137.

[40] ECF No. 224 at 4.  While it is true that "an 'amended complaint supersedes the original,'" *Ramirez v. Cnty. of San Bernardino*, 806 F.3d 1002, 1008 (9th Cir. 2015) (quoting *Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1474 (9th Cir. 1997)), it does not follow that all defenses and objections restart with the filing of each amended complaint.  Such a claim runs counter to the federal rules and established law, which provide that certain defenses are waived if not asserted

6

1   *Antitrust Litigation* permits my consideration of their successive Rule 12(b)(6) motion. [41]   In it,

2   the Ninth Circuit reasoned that strict application of Rule 12(g)(2) "can produce unnecessary and

3   costly delays" and that appellate courts "should generally be forgiving of a district court's ruling

4   on the merits of a late-filed Rule 12(b)(6) motion."[42]   While affirming that Rule 12(g)(2) facially

5   bars successive Rule 12(b)(6) motions, the Ninth Circuit held that district courts have some

6   discretion to consider such a motion if doing so does not prejudice the plaintiff and expedites

7   resolution of the case.[43]

8          But the Ninth Circuit neither eliminated Rule 12(g)(2) nor blessed pre-answer motion

9   practice that effects death by a thousand cuts.  *In re Apple* merely deemed it harmless error to

10  hear successive Rule 12(b)(6) motions if certain factors, like a just and speedy resolution of the

11  case, warrant it.[44]  Those conditions are not satisfied here.  First, the prejudice to Interior Electric

12  is manifest.  Interior Electric filed this complaint two years ago and has devoted considerable

13  time and energy to twice amending it.  Considering defendants' Rule 12(b)(6) motion now might

14

15

16  ———————————————————

17  in the first responsive pleading or motion.  *See, e.g.*, Fed. R. Civ. P. 12(b)(2); *Smith v. Idaho*, 392
    F.3d 350, 355 (9th Cir. 2004) ("[I]t is well-recognized that personal jurisdiction—unlike subject-
    matter jurisdiction—may be waived."); *Benny v. Pipes*, 799 F.2d 489, 392 (9th Cir. 1986) ("A

18  general appearance or responsive pleading by a defendant that fails to dispute personal
    jurisdiction will waive any defect in service or personal jurisdiction.").

19  [41] ECF No. 224 at 4 (citing *In re Apple iPhone*, 846 F.3d at 319).

20  [42] *In re Apple iPhone*, 846 F.3d at 319.

21  [43] *Id.* at 319–20 (determining that the district court's consideration of a late-filed Rule 12(b)(6)
    motion was harmless because the defendant's series of motions were not "filed for any
    strategically abusive purpose," declining to consider the motions "would have substantially

22  delayed resolution," and "the district court's decision on the merits of Apple's Rule 12(b)(6)
    motion materially expedited the district court's disposition of the case, which was a benefit to

23  both parties").

    [44] *Id.*

require further amendment that could, and should, have occurred earlier.[45]  Second, T.W.C.,

Ryba, and Wilmer have provided no reason why they did not raise these objections earlier,

despite being well aware of the claims against them.[46]  Their successive Rule 12(b)(6) motion

has thus resulted in a "scattershot approach to attacking" Interior Electric's causes of action,

"imped[ing] speedy resolution of the case."[47]  Numerous district courts have declined to consider

successive Rule 12(b)(6) motions under similar circumstances.[48]  I join their numbers and hold

that Rule 12(g)(2) now bars the defendants' motion to dismiss Interior Electric's unjust-

enrichment, aiding-and-abetting, quantum-meruit, promissory-estoppel, and civil-conspiracy-

against-T.W.C. claims.

---

[45] Federal Rule 12(g)(2) "contemplates the presentation of an omnibus pre-answer motion in which the defendant advances every available Rule 12 defense and objection he may have that is assertable by motion."  5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure: Civil 2d* § 1384 at 726 (1990).

[46] Instead, defendants merely assert that they did not bring this motion "for the sole purpose of delay," which they claim is the "only" reason to disregard a successive petition under Rule 12(g)(2).  ECF No. 224 at 5.  But the Ninth Circuit does not cabin Rule 12(g)(2)'s reach to successive petitions brought exclusively to delay the proceedings.  *See In re Apple iPhone*, 846 F.3d at 319.  And the defendants still fail to explain why they did not present these objections sooner, when Interior Electric's complaint was arguably even less factually developed.

[47] *Harrell v. City of Gilroy*, No. 17-CV-05204, 2019 WL 452039, at *8 (N.D. Cal. Feb. 5, 2019).

[48] *See id.*; *see also Humana Inc. v. Mallinckrodt ARD LLC*, No. CV 19-6926, 2020 WL 5640553, at *12 (C.D. Cal. Aug. 14, 2020) ("The Court declines to dismiss those claims . . . for the additional reason that Defendant did not raise this contention in its prior motion and therefore is prohibited from doing so here under Rule 12(g)(2)."); *Mario V. v. Armenta*, No. 18-cv-00041, 2019 WL 8137140, at *2 (N.D. Cal. Apr. 17, 2019) ("The issues now raised by Defendants could have, and under the Federal Rules should have, been litigated then.  Defendants have not offered any explanation as to why they failed to raise their current failure-to-state-a-claim defenses in their first motions to dismiss, or why Plaintiffs should be prejudiced by potential delay in litigating those defenses at this late date."); *In re Packaged Seafood Prods. Antitrust Litig.*, 277 F. Supp. 3d 1167, 1174 (S.D. Cal. Sept. 26, 2017) ("[T]o refuse to enforce Rule 12(g)(2)'s clear command . . . would set a dangerous precedent regarding the ability to continually hamstring a plaintiff with wave after wave of motions to dismiss.").

1        2.      **Rule 12(g)(2) does not bar Ryba and Wilmer's objections to Interior**
                 **Electric's intentional-interference-with-prospective-economic-advantage and**
2                **civil-conspiracy claims.**

3           Ryba and Wilmer have not waived their objections to Interior Electric's claims for

4    intentional interference with prospective economic advantage and conspiracy, however.  They

5    sought dismissal for both causes of action before: with respect to the intentional-interference

6    claim, Ryba and Wilmer argued that they did not act outside the scope of T.W.C.'s interest or

7    with malice toward Interior Electric; and, with respect to the conspiracy claim, they claimed

8    Interior Electric failed to allege the existence of an agreement to commit a viable tort.[49]  I agreed

9    and granted their motion, dismissing Interior Electric's amended complaint without prejudice.[50]

10   Defendants are thus again permitted to seek dismissal of those claims against Ryba and Wilmer,

11   assuming Interior Electric did not remedy its pleading defects.  So I consider these arguments on

12   their merits.

13   **C.     Intentional interference with prospective economic advantage**

14          To succeed on a claim for intentional interference with prospective economic advantage,

15   a plaintiff must allege facts demonstrating:

16              (1) a prospective contractual relationship between the plaintiff and
                a third party; (2) knowledge by the defendant of the prospective
17              relationship; (3) intent to harm the plaintiff by preventing the
                relationship; (4) the absence of privilege or justification by the
18              defendant; and (5) actual harm to the plaintiff as a result of the
                defendant's conduct.[51]

19

20

21

22   [49] ECF No. 137 at 7 n.2, 8–9.

     [50] ECF No. 179 at 6–8.

23   [51] *In re Amerco Derivative Litig.*, 252 P.3d 681, 702 (Nev. 2011) (quoting *Wichinsky v. Mosa*,
     109 Nev. 84, 87–88 (1993)).

1   Ryba and Wilmer generally argue that Interior Electric has merely alleged "parallel conduct" that

2   is not unlawful, and they assert that Interior Electric has failed to allege facts supporting their

3   intent to harm or that Interior Electric suffered actual harm, as well as the absence of privilege or

4   justification.[52]

5        Interior Electric has sufficiently alleged that Ryba and Wilmer both intended to and

6   caused actual harm.  Under Nevada law, "intent to harm" requires only "a purposeful act as

7   opposed to mere negligence or inadvertence."[53]  Interior Electric has cleared that threshold,

8   alleging facts that demonstrate both Ryba and Wilmer purposefully solicited Interior Electric

9   employees to form a competing subcontractor business, knowing that they could steal Interior

10  Electric's clients.[54]  And Interior Electric has certainly alleged sufficient facts that this conduct

11  resulted in the loss of customers and contracts.[55]  While defendants claim that these facts are

12  merely "consistent" with the claim and "insufficient to raise more than a suspicion of

13  wrongdoing,"[56] that is not the test for these elements, which requires facts showing that the

14  defendants are "substantially certain that interference with a commercial relationship will

15  occur."[57]

16

17  ───────────────
    [52] ECF No. 191 at 6–8.  In their motion, the defendants also argued that Interior Electric failed to
18  allege the existence of a contractual relationship with a third party, but they abandoned that
    argument in their reply.  *Compare id.* at 6, *with* ECF No. 224 at 5–8.  It is thus waived.

19  [53] *Las Vegas-Tonopah-Reno Stage Line, Inc. v. Gray Line Tours of S. Nev.*, 792 P.2d 386, 388
    (Nev. 1990).

20  [54] *See* ECF No. 188 at ¶¶ 38–41, 45.

21  [55] *See, e.g., id.* at ¶¶ 60 ("These breaches were the beginning of a calculated effort to starve
    Interior Electric Nevada of its cash flow so that it would be forced out of business, eliminating it
22  as a competitor to BAMM, and forcing it to leave the Las Vegas market."); 291 (noting that
    BAMM used Interior Electric's work product to complete various projects).

23  [56] ECF No. 224 at 6–7 (quoting *Twombly*, 550 U.S. at 554) (internal quotation marks omitted).

    [57] *Las Vegas-Tonopah-Reno Stage Line, Inc.*, 792 P.2d at 388.

For purposes of this Rule 12(b)(6) motion, Ryba's and Wilmer's acts were neither privileged nor justified. While Nevada courts have yet to definitively rule which privileges or justifications defeat an intentional-interference claim,[58] Nevada "favor[s] the Restatement view that where the interference is improper it is not privileged."[59] In determining whether conduct is "improper," the Restatement considers seven factors, including the nature of the conduct and the actor's motive, the interests of the parties, the public interest in protecting freedom of action and contractual interests, the proximity of the conduct, and the relations between the parties.[60] Interior Electric has sufficiently pled that Ryba and Wilmer's conduct was improper, alleging that the pair funneled cash to form a business with Interior Electric's employees, concealed their involvement, and then used Interior Electric's copyrighted materials to steal its clients and complete its contracts.[61] And while Ryba and Wilmer argue that their conduct was justified or privileged because they acted as business managers, resolution of that defense is inappropriate on a motion to dismiss because it requires me to consider facts not alleged in the complaint.[62] So I deny defendant's motion to dismiss with respect to Interior Electric's claim for intentional interference with prospective economic advantage.

---

[58] *See From the Future, LLC v. Flowers*, No. 2:06-CV-00203, 2009 WL 10709083, at *3 (D. Nev. 2009) ("Nevada has not addressed whether an attorney or other business advisor may be liable for tortiously interfering with his client's contracts.").

[59] *Las Vegas-Tonopah-Reno Stage Line, Inc.*, 792 P.2d at 388 n.1 (Nev. 1990); *see also Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1055 (9th Cir. 2008) (reciting that, under Nevada law, absence of privilege means the conduct is "improper" and relying on the Restatement's factors to determine "improper conduct").

[60] Restatement (Second) of Torts § 767 (1979).

[61] ECF No. 1 at ¶¶ 45, 49–50, 169.

[62] *See Suchow Borax Mines Consol. v. Borax Consol.*, 185 F.2d 196, 205 (9th Cir. 1950).

**D.     Civil conspiracy**

"Actionable civil conspiracy arises where two or more persons undertake some concerted action with the intent 'to accomplish an unlawful objective for the purpose of harming another,' and damage results."[63]   A conspiracy action must be based on an agreement to commit a viable tort.[64]   Ryba and Wilmer assert that this claim rises and falls with Interior Electric's other tort claims against them.[65]   Because I have held that Interior Electric has sufficiently alleged a claim for intentional interference with prospective economic advantage against Ryba and Wilmer, its civil-conspiracy claim similarly clears the pleading-stage hurdle.

**Conclusion**

IT IS THEREFORE ORDERED that T.W.C., Ryba, and Wilmer's motion to dismiss **[ECF No. 191] is DENIED.**  Defendants have until October 22, 2020, to answer.[66]

_____
U.S. District Judge Jennifer A. Dorsey
October 8, 2020

---

[63] *Guilfoyle v. Olde Monmouth Stock Transfer Co.*, 335 P.3d 190, 198 (Nev. 2014) (quoting *Consol. Generator-Nev., Inc. v. Cummins Engine Co.*, 971 P.2d 1251, 1256 (Nev. 1998)).

[64] *Id.*; *see also Philip v. BAC Home Loans Servicing, LP*, 644 Fed. App'x 710, 711 (9th Cir. 2016) (unpublished) (citing *Eikelberger v. Tolotti*, 611 P.2d 1086, 1088 (Nev. 1980)).

[65] ECF No. 191 at 10 ("Plaintiff's civil[-]conspiracy claim against Ryba and Wilmer also fails as a matter of law since it is not based on a viable tort.").

[66] Fed. R. Civ. P. 12(a)(4)(A).