1

2    **UNITED STATES DISTRICT COURT**

3    **DISTRICT OF NEVADA**

4
     Interior Electric Incorporated Nevada,          Case No.: 2:18-cv-01118-JAD-MDC

5             Plaintiff

6    v.                                             **Order Resolving Objections to the Special Master's Discovery Orders, Directing Discovery Responses, and Setting Dispositive Motion Deadline**

7    T.W.C. Construction, Inc. et al.,

8             Defendants                            [ECF Nos. 376, 378]

9    And all other claims and parties

10       Interior Electric Incorporated Nevada sues T.W.C. Construction, Inc., Prologis L.P., and

11   several other defendants for allegedly using its copyrighted electrical plans on various T.W.C.

12   construction projects after T.W.C. severed ties with the company.  T.W.C. asserts a breach-of-

13   contract counterclaim against Interior Electric for alleged failures to perform in accordance with

14   the parties' contracts and Nevada law.  In January 2020, the court appointed a special master to

15   oversee the parties' discovery disputes.  The special master recently ruled on two of Interior

16   Electric's motions to compel discovery from T.W.C. and Prologis related to the total gross

17   revenue the defendants received from 42 construction projects that allegedly used Interior

18   Electric's copyrighted material.  He ordered Prologis to respond to those requests with no

19   limitation, but he concluded that T.W.C. could limit its responses "regarding damages to issues

20   involving the electrical scope of the projects."[1]

21       Interior Electric objects to the special master's order limiting T.W.C.'s responses, and

22   Prologis objects to the special master's order requiring it to comply fully with Interior Electric's

23
     _____
     [1] ECF No. 375 at 3.

1 requests.  Because I find on de novo review that Interior Electric's requests are relevant and

2 proportional to the needs of the case, I affirm the special master's order directing Prologis to

3 respond, and I modify the special master's order limiting T.W.C.'s responses.  The net result is

4 that both defendants must respond to Interior Electric's requests for information related to the

5 total gross revenue of the projects identified in those requests by October 24, 2025.  And now

6 that discovery has concluded in this seven-year-old case, I also set the dispositive-motion

7 deadline for November 24, 2025.

8

**Discussion**

9

**A.    This court reviews the special master's orders de novo under Federal Rule of Civil**
10 **      Procedure 53(f)(3).**

11       The parties disagree over which legal standard applies to this court's review of the special

12 master's order.  The order appointing the special master confusingly identifies two potentially

13 applicable standards.  It first dictates that "any party seeking review of a [discovery] ruling" of

14 the special master must "file objections to the District Judge in accordance with the procedures

15 and standards of review and timing set forth in [FRCP] 72(a)."[2]  Under that rule, the district

16 judge "must consider timely objections and modify or set aside any part of the order that is

17 clearly erroneous or contrary to law."[3]  T.W.C. contends that this is the standard that applies.[4]

18       But the order also contains a provision titled "Review of Special Master's Reports,

19 Orders, or Recommendations," which states that review of any special-master order will "be

20 governed by FRCP 53(f)(3)."[5]  FRCP 53 is the federal rule that generally applies to the

21 _____

22 [2] ECF No. 169 at 3.

[3] Fed. R. Civ. P. 72(a).

23 [4] ECF No. 379 at 8.

[5] ECF No. 169 at 4.

1 || appointment of special masters.  Subsection (f)(3) states that the district court "must decide de

2 || novo all objections to findings of fact made or recommended by a master, unless the parties, with

3 || the court's approval, stipulate that . . . the findings will be reviewed for clear error[.]"[6]  Interior

4 || Electric argues that this is the standard that applies here.[7]  Prologis, for its part, agrees that FRCP

5 || 53 applies, but it contends that discovery disputes are procedural and are thus governed by FRCP

6 || 53(f)(5),[8] which states that "the court may set aside a master's ruling on a procedural matter only

7 || for an abuse of discretion."[9]

8 ||          I conclude that FRCP 53(f)(3)'s de novo review standard applies to the parties'

9 || objections.  The record doesn't show that the parties stipulated to FRCP 72(a)'s clear-error

10 || standard.  The form of the order appointing the special master was based on a proposed order

11 || submitted only by Interior Electric.[10]  And though it states that "discovery decision[s]" are

12 || subject to FRCP 72(a)'s standard, the special master was appointed to handle only discovery

13 || disputes.  In effect, the clause mandating the application of FRCP 72(a) to discovery decisions

14 || and the clause applying FRCP 53(f)(3) to special master "orders, reports, or recommendations"

15 || both apply to the exact same rulings.  Given the conflicting clauses in the appointment order and

16 || the fact that the record does not reflect that the parties stipulated to a standard other than that

17 || described in FRCP 53(f), that is the rule that I apply.  And because the special master's discovery

18 || decisions "are inextricably intertwined with conclusions of fact and law," even if I accept that a

19 || discovery decision is a procedural matter, as Prologis suggests, I find that the de novo standard in

20 ||

---

21 || [6] Fed. R. Civ. P. 53(f)(3).

|| [7] ECF No. 376 at 10–11.

22 || [8] ECF No. 378 at 6.

23 || [9] Fed. R. Civ. P. 53(f)(5).

|| [10] *See* ECF No. 166.

1  FRCP 53(f)(3)—not than the abuse-of-discretion standard in FRCP 53(f)(5)—is the applicable

2  one.[11]

3  **B.**  **FRCP 26 permits Interior Electric's discovery requests, so the court adopts the
   order concerning Prologis's responses and modifies the special master's order**
4  **concerning T.W.C.'s responses.**

5        Under FRCP 26, "[p]arties may obtain discovery regarding any nonprivileged matter that

6  is relevant to any party's claim or defense and proportional to the needs of the case."[12]  Courts

7  generally construe Rule 26(b)(1) liberally to aid in the "preparation and trial, or the settlement, of

8  litigated disputes."[13]  "Information within this scope of discovery need not be admissible in

9  evidence to be discoverable."[14]  If the requesting party makes a showing of relevancy, the

10  resisting party carries a "heavy burden"[15] and must demonstrate that the discovery request is

11  irrelevant, duplicative, unduly costly or burdensome, overly broad, or disproportional.[16]

12        *1.*       *Prologis's objections to the special master's order are overruled.*

13        Prologis objects to the special master's order requiring it to produce all documents that

14  are responsive to Interior Electric's requests for information pertaining to the total gross revenue

15  Prologis earned from the 42 projects that Interior Electric alleges used its copyrighted material.[17]

16

---

17  [11] *See Hernandez v. Lynch*, 2019 WL 13014631, at *2 (C.D. Cal. May 10, 2019) (collecting
   cases that applied FRCP 53(f)(3)'s de novo standard to discovery orders that necessarily made
18  findings of law and fact). I have also considered the special master's rulings under the clear-error
   and abuse of discretion standards urged by T.W.C. and Prologis, and I conclude that my ultimate
19  findings remain unchanged under either standard of review.

20  [12] Fed. R. Civ. P. 26(b)(1).

   [13] *C.f.*, *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34 (1984) (interpreting Washington's
21  discovery rules, which were modeled on the federal rules).

22  [14] Fed. R. Civ. P. 26(b)(1).

   [15] *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975).

23  [16] Fed. R. Civ. P. 26(b)(2)(C).

   [17] ECF No. 378.

1  It argues that the special master misconstrued the case law Prologis cited to support its

2  arguments and failed to provide any meaningful analysis regarding its relevance and

3  proportionality arguments.[18]  Interior Electric responds that the requests are relevant to a

4  disgorgement-of-profits damages theory and that the case law Prologis relies on doesn't support

5  its position.[19]

6        *a.    The discovery requests are relevant to a disgorgement-of-profits damages*
         *theory and are properly limited to the projects that allegedly used Interior*
7        *Electric's copyrighted work.*

8        Prologis argues that Interior Electric's requests for total gross revenue are irrelevant and

9  overbroad because the allegedly copyrighted material pertains only to the electrical work

10  completed for each project, which makes up one small portion of the total construction of a

11  building.[20]  It contends that Interior Electric cannot show that it would be entitled to recover

12  Prologis's total damages for the project under 17 U.S.C. § 504, the federal damages statute for

13  copyright-infringement claims.  That statute permits a successful plaintiff to recover "any profits

14  of the infringer that are attributable to the infringement . . . ."[21]  The Ninth Circuit has held that

15  to prove entitlement to those damages a plaintiff must "show a causal nexus between the

16  infringement and the gross revenue" sought.[22]  If that standard is met, the burden shifts to the

17  infringer to "apportion[] the profits that were not the result of infringement."[23]  Prologis argues

18  
_____

[18] ECF No. 378 at 7–11.  Prologis also argues that the special master erred when he concluded
19  that Prologis "technically waived" its objections because its responses were untimely.  *Id.* at 12–
13.  Because I conclude that Prologis's objections fail on their merits, I need not and do not
20  consider its waiver arguments.

21  [19] ECF No. 380.

    [20] ECF No. 378 at 7–8.
22
    [21] 17 U.S.C. § 504(b).

23  [22] *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 711 (9th Cir. 2004).

    [23] *Id.*

1  that Interior Electric should be required to advance "some cognizable, threshold argument

2  supporting the potential existence of causal nexus" to justify its total-gross-revenue requests

3  under a disgorgement-of-profits theory.[24]

4         Assuming without deciding that Interior Electric must raise some nonspeculative

5  argument that total gross revenue is connected to the alleged infringement before it may seek

6  discovery on the issue, it has easily met that low burden.  Interior Electric acknowledges that

7  constructing a building requires several discrete subprojects, not all of which relate to electrical

8  components.  But it argues that, due to the complex nature of building construction and the

9  interconnected reliance on each independent part, it is difficult to ascertain just what portions of

10 a project should be considered attributable, at least to some extent, to the electrical components.

11 It notes that "construction projects are unique in that they rely on the work of many trades, each

12 of which may appear simple or insignificant by itself, but the project as a whole cannot be

13 completed without each of these trades doing its part."[25]  Because of the complex nature of the

14 construction process, Interior Electric argues, it is entitled to "put forth its own theory of what

15 scope of profits are attributed to the infringement," which it can do only if it has access to each

16 project's total revenue.[26]

17        Interior Electric also theorizes that it is entitled to discovery on the revenue Prologis

18 generated by leasing the buildings after construction was completed because "without utilization

19 of the electrical engineering plans," construction would not have been completed or, at the very

20 least, it would have been delayed.[27]  To the extent that using the plans allowed Prologis to

21
_____

22 [24] ECF No. 378 at 8 n.4.

[25] ECF No. 380 at 8.

23 [26] *Id.* at 7.

[27] *Id.* at 9.

1  continue building, Interior Electric may be able to argue that it entitled to disgorgement of profits

2  that were earned by leasing out space in the timely completed buildings.  I find that Interior

3  Electric's proffer has sufficiently established—at least at this discovery stage—that it has a

4  viable theory of damages that permits it to discover information concerning total profits for

5  Prologis's allegedly infringing projects.[28]

6              b.        *Prologis's legal authority doesn't support its arguments to the contrary.*

7          Prologis contends that the special master misconstrued the case law it presented to argue

8  that Interior Electric's requests were irrelevant and overbroad.[29]  The special master concluded

9  that the "cases cited by Prologis as opposing the production of the requested documents relate to

10 the total gross revenue as a company rather than the gross revenue related to the copyrighted

11 materials that were . . . utilized for this project . . . ."[30]  After reviewing the three nonbinding

12 cases Prologis analyzes in its objection, I agree with the special master's conclusion that they are

13 materially distinguishable from Interior Electric's requests.

14         In *Kaseberg v. Conaco, LLC*, the plaintiff alleged that the *Conan* show used jokes from

15 his personal blog during monologues in four episodes that aired in 2015.[31]  During discovery, he

16 sought all documents "relating to [the *Conan* show's] annual gross revenues and annual net

17 profits in 2015."[32]  The district court held that the request was "simply too broad to be relevant,"

18

19 ─────────────

[28] Nothing in this order should be construed as an assessment of the merits of Interior Electric's
20 disgorgement-of-profits theory under 17 U.S.C. § 504.

[29] ECF No. 378 at 9–10.
21
[30] ECF No. 370 at 2 (cleaned up).  The unaltered sentence contains grammatical errors that
22 Prologis contends makes the special master's finding incomprehensible.  I find that the meaning
of the sentence is easily understandable even with those errors.

23 [31] *Kaseberg v. Conaco, LLC*, 2016 WL 3997600, at *1 (S.D. Cal. July 26, 2016).

[32] *Id.* at *6.

1    noting that the copyright allegations were limited to "four, one-liner jokes, which together make

2    up no more than 2 minutes of air time in a show that ran approximately 180 new episodes in

3    2015, each with a runtime of about 42 minutes."[33]  But the court did require that Conanco turn

4    over total gross revenue and net profits for the four episodes that allegedly used the copyrighted

5    material, finding that, "although the jokes amounted to less than 0.05% of each of these shows,"

6    the total revenue of each episode was relevant to the plaintiff's damages.[34]

7            Prologis argues that *Kaseberg* supports limiting discovery to the revenue directly tied to

8    the electrical component of its projects, but I find that it actually militates in favor of granting

9    Interior Electric the broader discovery it seeks.  Interior Electric does not seek the total gross

10   revenue of Prologis's entire operation—it requests information related to the specific projects

11   that allegedly used its copyrighted material.  That's the same limitation that the court permitted

12   in *Kaseberg*, even while acknowledging that the copyrighted material makes up only a small

13   portion of those profits.  Here, even if the electrical component of the at-issue building projects

14   was just a fraction of the total build, I find that the total gross revenue from those specific builds

15   is relevant to Interior Electric's damages claim, just as the court in *Kaseberg* concluded that

16   0.05% of an episode spent on copyrighted material entitled the plaintiff to discover 100% of the

17   profits from those episodes.

18           *Salinas v. Procter & Gamble Co.*[35] doesn't support Prologis's arguments either.  In that

19   Central District of California case, the plaintiff contended that the defendant used his

20   copyrighted "Salinas Whistle" in an Old Spice commercial and sought documents showing the

21

22   [33] *Id.* at *8.

23   [34] *Id.*

     [35] *Salinas v. Procter & Gamble Co.*, 2020 WL 8455187 (C.D. Cal. Dec. 4, 2020).

total quarterly revenues for all Old Spice branded products from 2006 to 2020.[36]  The district

court ruled that the plaintiff did not offer any reasons why he would be entitled to indirect profits

at all, so he could not justify such a broad discovery request.[37]  But here, Interior Electric has

articulated a nonspeculative theory of damages that warrants discovery, and its limited requests

for profits obtained in projects that used its copyrighted material is incomparable to Salinas's

request for all profits related to all Old Spice products over a 14-year period.

   Prologis's final case fares no better.  In *Ocean Atlantic Corp. v. DRH Cambridge Homes*

*Inc.*, a development company sued over the defendant's use of its copyrighted development plans

created for a residential community on a specific parcel of land, after it failed to close on the sale

of the land and another company took over development.[38]  The plaintiff sought "massive

document production involving all aspects of [the defendant's] financial activities, including

costs, sales, and profits on all its developments and all of its home sales throughout the country"

for a six-year time period.[39]  The court held that profits unrelated to the residential-community

project had no relation to the copyrighted development plans.[40]  It also concluded that profits

from the project itself weren't relevant to the plaintiff's infringement case because the developer

had paid the plaintiff for the plans, limiting recovery to "the reasonable costs of acquiring such a

plan or the value of [the defendant's] use of the plan."[41]  So, the court reasoned, broad discovery

---

[36] *Id.* at *1.

[37] *Id.* at *2.

[38] *Ocean Atl. Woodland Corp. v. DRH Cambridge Homes, Inc.*, 262 F. Supp. 2d 923, 925 (N.D. Ill. 2003).

[39] *Id.* at 925.

[40] *Id.* at 926–27.

[41] *Id.* at 928.

1   into the defendant's profits from the residential community itself had no relation to the alleged

2   infringement.[42]

3        In this case, Interior Electric's discovery request is properly limited to the projects that

4   allegedly used its copyrighted plans, distinguishing it from the overbroad request in *Ocean*

5   *Atlantic*.  And Interior Electric didn't sell its plans for use by the defendants—it alleges that it

6   created the plans as part of its build-design contract with Prologis, meaning that it was the only

7   contractor entitled to use those plans.[43]  Because Interior Electric reasonably theorizes that

8   Prologis may have been forced to delay construction and forego some profit had it not used

9   Interior Electric's plan, it is in a materially different position than the *Ocean Atlantic* plaintiff.

10  So I conclude that the special master properly discounted Prologis's proffered authority.

11              *c.    Interior Electric may seek discovery on projects that are alleged to have*
                *used copyrighted work even if they weren't mentioned in its operative*
12              *complaint.*

13       Prologis next argues that the special master improperly permitted discovery on several

14  projects that were not mentioned in Interior Electric's operative complaint.[44]  Interior Electric

15  responds that it is not limited to discovery on just the projects mentioned in the complaint, noting

16  that "the parties have already conducted exhaustive discovery regarding the larger universe of

17  infringing projects, for nearly four years, with Prologis never before objecting to the scope of

18  discovery . . . ."[45]  It also contends that it would be unfairly prejudicial to prevent discovery

19

20

21  _____

    [42] *Id.*
22
    [43] ECF No. 380 at 15.

23  [44] ECF No. 378 at 13–14.

    [45] ECF No. 380 at 16.

1 "concerning acts of infringement of which all parties are aware, based solely on the fact that

2 Interior Electric was unable to identify those projects in 2020."[46]

3      At this discovery stage and on this sparse record, I cannot conclude that Interior Electric

4 should be prevented from conducting discovery on projects that were not mentioned in its

5 operative complaint.  Interior Electric argues that Prologis was on notice of these additional

6 allegations of infringement throughout the discovery process, and Prologis doesn't directly

7 dispute that characterization.  This is a matter better resolved at summary judgment and on a

8 more developed record.

9      In sum, I conclude that Interior Electric's discovery requests are relevant and directly

10 proportional to its disgorgement-of-profits damages theory.  I thus affirm the special master's

11 order directing Prologis to respond to those requests, and I order Prologis to serve complete

12 responses by October 24, 2025.

13

14      **2.    *Interior Electric's requests to T.W.C. are relevant to damages and proportional to the needs of this case, so the court modifies the special master's order.***

15      Interior Electric's at-issue discovery requests to T.W.C. seek largely the same

16 information as its requests to Prologis—the total gross revenue of 42 projects that Interior

17 Electric alleges used its copyrighted material.[47]  But when resolving these similar requests, the

18 special master determined that their scope was "far beyond the reasonable limit," finding that

19 "Interior Electric's claims are specifically related to damages as to alleged breach of contract and

20 copyright infringement concerning electrical issues only."[48]  So he ordered that T.W.C. "may

21

---

22 [46] *Id.* at 17.

23 [47] *Id.*

[48] ECF No. 375 at 3.  This is the second time this court has weighed in on Interior Electric and T.W.C's discovery dispute over total-gross-revenue requests.  In October 2024, I remanded the

1  limit the interrogatory responses and document production regarding damages to issues

2  involving the electrical scope of the projects."[49]

3       Interior Electric objects to that limitation.  It argues that it may seek disgorgement of

4  profits as damages for T.W.C.'s alleged infringement, and that it's up to a jury to determine how

5  the disgorgement number is reached.  Interior Electric theorizes that, because the electrical

6  components of T.W.C.'s construction projects are "central to the building's function" and are

7  relied on by other subcontractors whose work requires those electrical components to work, it is

8  not an easy task to determine what portions of a project's total gross revenue stem from the

9  electrical work as opposed to other building components.[50]  And because "determining the value

10  of the electrical portion of a building is a fact-intensive analysis on which reasonable minds

11  could differ," Interior Electric argues that it is entitled to T.W.C.'s full accounting of the at-issue

12  projects to make its own calculations that it can urge to the jury.[51]

13       For the same reasons that Interior Electric's requests to Prologis are permitted by FRCP

14  26, I find that Interior Electric is also entitled to discover information related to the total gross

15  revenue that T.W.C. received for the identified projects.  T.W.C. argues that it is possible to

16  identify the revenue it received from just the electrical work and that it has already produced

17  documents with that information.[52]  But at this stage, Interior Electric is entitled to make its own

18  calculations and determinations concerning what should be considered a profit related to the

19

20  _____

    issue to the special master for clarification of previous orders on the topic.  ECF No. 361.  The
21  special master's amended order at issue here is the result of that remand.

    [49] *Id.*
22
    [50] *See* ECF No. 376 at 15.

23  [51] *Id.*

    [52] ECF No. 379 at 11.

electrical work completed on a project; it need not take T.W.C.'s method of deciding that

breakdown at face value.  Even if it is ultimately unsuccessful at summary judgment or at trial,

Interior Electric has articulated a plausible theory of damages that may encompass the

disgorgement of profits beyond those directly tied to the electrical work that relates to the

copyrighted plans.  That is sufficient to justify the discovery it seeks.  The question of whether

Interior Electric's method of calculating damages satisfies the causal-nexus test remains reserved

for summary judgment or trial.

     T.W.C. also argues that Interior Electric had previously "elected to assert damages for its

alleged lost profits" and cannot now change its theory of damages at the end of a six-year

discovery period.[53]  But T.W.C. does not show that Interior Electric truly disclaimed reliance on

a disgorgement theory.  It merely cites to an Interior Electric expert's report that opined on

Interior Electric's lost-profits damages to insinuate that this is the only damages theory it had

notice of.[54]  On this sparse record, I cannot conclude that Interior Electric completely failed to

assert a statutory remedy or that T.W.C. would be prejudiced by Interior Electric's assertion of

that theory now.  This is also another argument that is more appropriately raised at the

dispositive-motion stage of this case.

---

[53] *Id.* at 12.  T.W.C. raises several other arguments that I decline to consider.  It argues that Interior Electric is not entitled to the discovery because its "copyright claims are flimsy at best," but it fails to cite to any authority allowing this court to decide discovery disputes based on the merits of the case.  It contends that the special master's limitation "already provides Interior Electric with more information than it is arguably entitled to," but T.W.C. doesn't seek modification of the special master's order to further limit its discovery obligation, so I don't find that argument relevant.  T.W.C. also argues that Interior Electric should have sought this information earlier in discovery, but it fails to cite to a rule requiring that a party must seek important information early, nor does it object to the special master's finding that the discovery requests were timely.

[54] *Id.*

In sum, I conclude on de novo review that the special master erred by limiting Interior Electric's discovery requests to damages related to the electrical scope of the subject projects. I thus modify the special master's order to require that T.W.C. respond to Interior Electric's requests for production of documents and interrogatories, with no limitation to revenue derived from the electrical components of the projects.

## Conclusion

IT IS THEREFORE ORDERED that Prologis's objection to the special master's order **[ECF No. 378] is OVERRULED**. Prologis must produce all documents within its possession, custody, or control that are responsive to Interior Electric's document requests identified in the special master's order (ECF No. 370) **by October 24, 2025**.

IT IS FURTHER ORDERED that Interior Electric's objection to the special master's order **[ECF No. 376] is SUSTAINED**. The special master's order **[ECF No. 375] is MODIFIED** as follows: T.W.C. Construction is required to respond to the requests for production and interrogatories identified in the special master's order **by October 24, 2025**, with no limitation related to the "electric scope of the projects."

IT IS FURTHER ORDERED that **dispositive motions are due by Monday, November 24, 2025**. Local Rule 7-2(b)'s briefing schedule for summary-judgment motions will apply. The parties' obligation to file a joint pretrial order is stayed until 10 days after resolution of any dispositive motions.

_____
U.S. District Judge Jennifer A. Dorsey
September 26, 2025

14